FEDERAL TRADE COMMISSION,
Petitioner-Appellee,

v.

WINTERS NATIONAL BANK & TRUST
CO., Respondents-Appellants.

No. 78–3347.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 23, 1979.

Decided Sept. 11, 1979.

Roger J. Makley, Coolidge, Wall, Matu-
soff, Womsley & Lombard Co., L.P.A., Day-
ton, Ohio, for respondents-appellants.

Drew V. Tidwell, Consumer Bankers Association, Washington, D.C., for amicus curiae Consumer Bankers.

Michael N. Sohn, Denis E. Hynes, Gerald P. Norton, W. Dennis Cross, D. Barry Morris, Jane P. Schlaifer, Federal Trade Commission, Washington, D.C., for petitioner-appellee.

Before ENGEL and KEITH, Circuit Judges and PECK, Senior Circuit Judge.

ENGEL, Circuit Judge.

Winters National Bank & Trust Company (Winters) appeals from a judgment of the district court enforcing a subpoena *duces tecum* issued by the Federal Trade Commission (Commission). The subpoena directs Winters to produce a wide variety of documents and information relative to consumer purchase transactions financed by it.[1]

The subpoena was purportedly issued in furtherance of a non-public investigation[2]

1. The subpoena, as amended, contains the following specifications:

 *SPECIFICATION ONE*

 Such documents, or in lieu thereof a verified written statement, as will show for the bank:

 a. the correct corporate title and principal place of business, and the date and state of charter;

 b. all branch locations and other addresses at which the bank has done business since January 1, 1976 to the date of return;

 *SPECIFICATION TWO*

 Such documents, or in lieu thereof a verified written statement, as will show all sellers which have, since May 14, 1976, sold, assigned, transferred, negotiated or pledged to the bank, retail installment contracts or other consumer credit contracts.

 *SPECIFICATION THREE*

 All documents as will show from May 14, 1976 to the date of return of this subpoena:

 a. one specimen of each different loan contract form used by the bank to finance direct consumer loans;

 b. one specimen of each different form or contract provided by the bank to any seller for the seller's use in the sale or lease of any consumer good or service, and the name and address of each of the sellers to whom they are provided. These documents shall include, but are not limited to, all forms that evidence the sale or lease of a consumer good or service, all forms that contain immediate assignments to the bank, and all forms which condition the financing of a purchase upon acceptance by the bank.

 c. one specimen of each different form or contract provided by the bank to any seller for the seller's use in financing the sale or lease of a consumer good or service and the name and address of each of the sellers to whom they are provided.

 *SPECIFICATION FOUR*

 Such documents, or in lieu thereof a verified written statement, as will show for each of the sellers identified in SPECIFICATION THREE from May 14, 1976 to the date of return of this subpoena:

 a. the total dollar volume of consumer credit financing arranged through the bank;

 b. the total number of consumer installment sale or lease contracts financed through the bank;

 c. the extent, if any, to which the inventory of the seller is financed by the bank.

 *SPECIFICATION FIVE*

 Such documents, or in lieu thereof a verified written statement, as will show from May 14, 1976 to the date of return of this subpoena:

 a. any consumer complaints regarding a good or service purchased by a consumer pursuant to a sale or lease agreement which was financed by the bank, or any consumer credit contract of which the bank became the subsequent assignee.

 b. any actions taken by the bank in response to the complaints described in SPECIFICATION FIVE (a).

 *SPECIFICATION SIX*

 All documents prepared or dated between November 18, 1975 and the date of return of this subpoena which embody communications between the bank and any seller identified in SPECIFICATION THREE and which refer or relate to plans, procedures, guidelines, or policies concerning the Rule.

2. On October 20, 1976 the Commission issued a resolution authorizing a nonpublic investigation into acts and practices which may violate 16 C.F.R. § 433 (1979). That resolution states:

 File No. 772-3001

 Nature and Scope of Investigation:

 An investigation to determine whether unnamed persons, partnerships or corporations engaged in the sale or lease of goods or services to consumers have been or are engaged in unfair or deceptive acts or practices in violation of 16 CFR 433 and Section 5 of the Federal Trade Commission Act (15 USC 45 [15 U.S.C. § 45]) in connection with the advertising, promotion, offering for sale or lease, sale, lease or distribution in or affecting commerce of goods or services to consumers. Such investigation shall, in addition, determine whether Commission action to obtain consumer redress would be in the public interest.

 The Federal Trade Commission hereby resolves and directs that any and all compulsory process available to it be used in connec-

into practices which may violate the Commission's "Holder-In-Due-Course Rule", 16 C.F.R. § 433 (1979).[3] That Rule, in brief, states that in connection with any sale or lease of goods or services to consumers, it is an unfair or deceptive trade practice for a seller to take or receive a consumer credit contract or accept the proceeds of a purchase money loan unless a notice that the holder of the credit contract is subject to all claims and defenses which the debtor could assert against the seller of the goods is inserted in the credit contract.

From the point of view of Winters and of financing institutions generally, the effect of this Rule is, of course, to strip the ultimate holder of the paper of its traditional status as a holder-in-due-course and to subject it to any potential defenses which the purchaser might have against the seller. It is, therefore, not surprising that banks and others who would prefer the status of a holder-in-due-course should dislike it.[4] The wisdom of the Rule, however, is not here in dispute and no claim is made that its imposition upon retail vendors is beyond the rule-making authority of the Commission under the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.* (1976).

tion with this investigation and that this resolution shall become effective immediately. Authority to Conduct Investigation:

Sections 3, 6, 9 and 10 of the Federal Trade Commission Act, 15 U.S.C. [§§] 43, 46, 49 and 50; Sections 202 and 206 of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (P.L. 93–637 (Jan. 4, 1975)); FTC Procedures and Rules of Practice, 16 C.F.R. 11[1.1], *et seq.,* and supplements thereto.

Under its practice, the Commission may, by published order or rule, delegate the authority to investigate contained in 15 U.S.C. § 46 to the Regional Directors and others. *See* Reorganization Plan No. 4 of 1961, 75 Stat. 837; 16 C.F.R. § 0.7 (1979). The use of the resolution is apparently designed both to provide notice of the purpose of the investigation itself, *see* 16 C.F.R. § 2.6 (1979), and to trigger the exercise of subpoena powers by the Regional Directors, thus giving the Commission a supervisory curb on the otherwise indiscriminate use of the subpoena power, which accompanies and is a part of its investigative authority, *see* 16 C.F.R. § 2.7 (1979).

3. The operative portion of the Rule provides:
**§ 433.2 Preservation of consumers' claims and defenses, unfair or deceptive acts or practices.**
In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of Section 5 of that Act for a seller, directly or indirectly, to:
(a) Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face, type:
NOTICE
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES

OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
or, (b) Accept, as full or partial payment for such sale or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type:
NOTICE
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

4. The Consumer Bankers Association has appeared as an *amicus curiae* in support of Winters' position. The Association purports to represent more than 300 commercial banks which engage in extending consumer credit by making direct loans to consumers as well as purchasing retail installment sales contracts from sellers of consumer goods and services. Combined, the members of the Association are claimed to extend more than $54 billion in consumer credit, over 50% of all consumer credit outstanding held by commercial banks. In its *amicus* brief, the Association claims that if the position of the Commission is sustained, the traditional relationships among the Commission, the federal bank regulatory agencies and the banks will be severely disrupted.

In answer to inquiries from the bench during oral argument, counsel for Winters advised that both the Board of Governors of the Federal Reserve System and the Comptroller of the Currency had been invited to intervene as *amicus,* but had declined on the basis that the issue presented was isolated.

In its brief, Winters frames the issue on appeal as follows:

> Whether the FTC subpoena of Winters National Bank and Trust Company, issued pursuant to authority allegedly granted by 15 U.S.C. Section 49 in connection with an FTC investigation of compliance with its Holder-In-Due-Course Rule by retail sellers, constituted an unlawful investigation of and attempt to regulate a national bank, in violation of 15 U.S.C. Sections 45, 46(a) and 57a(f).

The essence of Winters' argument is not that it is wholly exempt from the Commission's subpoena powers[5] but rather that the overreaching scope of the subpoena establishes, in itself, that its "true purpose" is to make the bank the target of the investigation and thereby indirectly to regulate it, an objective clearly forbidden under 15 U.S.C. §§ 46 and 57a(f) (1976).

In enforcing the subpoena, the district court upheld its validity as a proper exercise of the Commission's power by relying primarily upon the district court decision in *FTC v. Rockefeller,* 441 F.Supp. 234 (S.D.N.Y.1977) (*Rockefeller I*). We affirm, although for reasons more akin to those subsequently expressed by the Second Circuit in *FTC v. Rockefeller,* 591 F.2d 182 (2d Cir. 1979) (*Rockefeller II*).

### I.

The legal standard for enforcing a subpoena *duces tecum* issued by the Commission is set forth in 15 U.S.C. § 49 (1976)[6] and does not seem to be a point of contention on appeal. As Judge Rubin stated:

> Where . . . the inquiry in question is within the authority of the Federal Trade Commission, the subpoena demand is not so indefinite that it amounts to an unreasonable burden, and the information sought is reasonably relevant, enforcement of such subpoena should be ordered. *United States v. Morton Salt Company,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401; *F.T.C. v. Rockefeller,* 441 F.Supp. 234 (S.D.N.Y.1977).[7]

**5.** Winters, in its original brief, however, observes that "The FTC's investigative powers derive primarily from 15 U.S.C. Section 46(a) . . . which expressly exempts national banks and common carriers from its provisions".

**6.** In relevant part, 15 U.S.C. § 49 provides:

> For the purposes of sections 41 to 46 and 47 to 58 of this title the Commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any person, partnership, or corporation being investigated or proceeded against; and the Commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation.
>
> \* \* \* \* \* \*
>
> Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing. And in case of disobedience to a subpoena the Commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.
>
> \* \* \* \* \* \*
>
> Any person may be compelled to appear and depose and to produce documentary evidence in the same manner as witnesses may be compelled to appear and testify and produce documentary evidence before the Commission as hereinbefore provided.

**7.** Other courts have similarly described the responsibility of a district court:

> The district court's role in a subpoena enforcement proceeding is strictly limited where the subpoena is attacked for lack of agency jurisdiction. The subpoena must be enforced if the information sought is "not plainly incompetent or irrelevant to any lawful purpose" of the FTC. *Federal Maritime Commission v. Port of Seattle,* 521 F.2d 431 (9th Cir. 1975) (*quoting Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 87 L.Ed. 424 (1943)). *Accord, FTC v. Swanson,* 560 F.2d 1, 2 (1st Cir. 1977); *FTC v. Feldman,* 532 F.2d 1092, 1098 (7th Cir. 1976). *See United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *FTC v. Texaco, Inc., supra* [180 U.S. App.D.C. 390 at 400–01 & n. 23,] 555 F.2d [862] at 872–73 & n. 23.

*Casey v. FTC,* 578 F.2d 793, 799 (9th Cir. 1978). *See also* K. Davis, *Administrative Law Treatise* § 3.12 at 216 (1958), wherein the author, in discussing the extent of judicial inquiry in enforcing subpoenas, states:

> A court may always consider such questions as unreasonable searches and seizures, self-incrimination, undue breadth of the subpoena, improper inclusion of irrelevant infor-

In this appeal Winters does not raise the latter two issues as grounds for not enforcing the subpoena. Rather, Winters argues that the Commission's investigation is not within its authority.

■ Section 6 of the Federal Trade Commission Act, 15 U.S.C. § 46, confers certain investigative powers upon the Commission. That Section, in pertinent part, reads:

The Commission shall also have power—

(a) To gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any person, partnership, or corporation engaged in or whose business affects commerce, excepting banks and common carriers subject to the Act to regulate commerce, and its relation to other persons, partnerships, and corporations.

(b) To require, by general or special orders, persons, partnerships, and corporations, engaged in or whose business affects commerce, excepting bank and common carriers subject to the Act to regulate commerce, or any class of them, or any of them, respectively, to file with the Commission in such form as the Commission may prescribe annual or special, or both annual and special, reports or answers in writing to specific questions, furnishing to the Commission such information as it may require as to the organization, business, conduct, practices, management, and relation to other corporations, partnerships, and individuals of the respective persons, partnerships, and corporations filing such reports or answers in writing. Such reports and answers shall be made under oath, or otherwise, as the Commission may prescribe, and shall be filed with the Commission within such reasonable period as the Commission may prescribe, unless additional time be granted in any case by the Commission.

\* \* \* \* \* \*

*Provided,* That the exception of "banks and common carriers subject to the Act to regulate commerce" from the Commission's powers defined in clauses (a) and (b) of this section, shall not be construed to limit the Commission's authority to gather and compile information, to investigate, or to require reports or answers from, any person, partnership, or corporation to the extent that such action is necessary to the investigation of any person, partnership, or corporation, group of persons, partnerships, or corporations, or industry which is not engaged or is engaged only incidentally in banking or in business as a common carrier subject to the Act to regulate commerce.

The Commission thus has broad investigatory powers, although it can be seen that, apart from the proviso cited,[8] Sections 46(a) and (b) clearly prohibit the Commission from investigating unfair or deceptive acts by banks. As Winters correctly points out, that power lies with the Comptroller of the Currency pursuant to 15 U.S.C. § 57a(f)(1) and (2)(A).[9]

mation, administrative authority to make the particular investigation, power to require disclosures concerning activities outside the agency's regulatory authority, and proper issuance of the particular subpoena. (Footnotes omitted)

8. This proviso was added to Section 46 by the Trans-Alaska Pipeline Authorization Act, Pub.L. No. 93–153, § 408(e), 87 Stat. 592 (1973) as amended by Magnuson–Moss Warranty—Federal Trade Commission Improvement Act, Pub.L. No. 93–637, § 203(a)(3), 88 Stat. 2198 (1975).

9. **Bank unfair or deceptive acts or practices; promulgation of regulations by Board of Gov-**

**ernors of Federal Reserve System; agency enforcement and compliance proceedings; effect of violations; power of other Federal agencies unaffected; reporting requirements**

(f)(1) In order to prevent unfair or deceptive acts or practices in or affecting commerce (including acts or practices which are unfair or deceptive to consumers) by banks, each agency specified in paragraph (2) of this subsection shall establish a separate division of consumer affairs which shall receive and take appropriate action upon complaints with respect to such acts or practices by banks subject to its jurisdiction. The Board of Governors of the Federal Reserve System shall prescribe regulations to carry out the purposes of this section, including regulations defining with specificity such unfair

Despite the apparent authorization provided in Section 46, Judge Rubin, in enforcing the Commission's subpoena, seemingly relied upon *Rockefeller I* and consequently upon Judge Lasker's reasoning that Section 49 provides independent authority for issuing the subpoena.

In *Rockefeller I,* the Commission sought enforcement of several subpoenas *duces tecum* which were issued to bank holding companies for the ostensible purpose of gathering information about the existence and effect of interlocking relationships between the petroleum industry and the financial sector. The investigation was undertaken pursuant to an express congressional direction to the Commission to conduct a study of the energy industry. *See Rockefeller I, supra,* 441 F.Supp. at 236; *Rockefeller II, supra,* 591 F.2d at 184. The defendants attacked the subpoenas on the ground, *inter alia,* that the Commission was expressly prohibited from investigating banks by 15 U.S.C. § 46. The district court did not decide this question, however, but enforced the subpoenas upon a finding that Section 49 conferred investigative power upon the Commission independent of the constraints of Section 46. The court stated:

> or deceptive acts or practices, and containing requirements prescribed for the purpose of preventing such acts or practices. Whenever the Commission prescribes a rule under subsection (a)(1)(B) of this section, then within 60 days after such rule takes effect such Board shall promulgate substantially similar regulations prohibiting acts or practices of banks which are substantially similar to those prohibited by rules of the Commission and which impose substantially similar requirements, unless such Board finds that (A) such acts or practices of banks are not unfair or deceptive, or (B) that implementation of similar regulations with respect to banks would seriously conflict with essential monetary and payments systems policies of the Board, and publishes any such finding, and the reasons therefor, in the Federal Register.
>
> (2) Compliance with regulations prescribed under this subsection shall be enforced under section 1818 of Title 12, in the case of—
>
> > (A) national banks and banks operating under the code of law for the District of Columbia, by the division of consumer affairs established by the Comptroller of the Currency; . . . . .

Moreover, although neither side has briefed the point, the subpoena power of § 49 extends not only to those who are not targets of an investigation, but also to those who, because of an exemption such as is enjoyed by these respondents, can never be targets. *FTC v. Cockrell,* 431 F.Supp. 561, 563, 564 (D.D.C.1977); *Freeman v. Brown Brothers Harriman & Co.,* 250 F.Supp. 32, 34 (S.D.N.Y.1966), *aff'd* 357 F.2d 741 (2d Cir.), *cert. denied* 384 U.S. 933, 86 S.Ct. 1446, 16 L.Ed.2d 532 (1966); *Freeman v. Fidelity-Philadelphia Trust Company,* 248 F.Supp. 487, 492 (E.D.Pa.1965).

441 F.Supp. at 240 (footnote omitted).

■ The Second Circuit, while affirming the district court's judgment in *Rockefeller I,* disagreed with the basis for the decision. In *Rockefeller II,* Judge Feinberg stated that Section 49 " 'is not an independent grant of authority to or source of substantive power for the Commission . . . .' Rather, section 6 [§ 46] must govern, and subsection (a) exempts, 'banks' from Commission investigations." 591 F.2d at 186.[10] The Second Circuit further held that the banks were more than mere repositories of documents and were in fact ancillary targets of the investigation.[11] Nonetheless,

**10.** The Commission similarly argues before us that Section 49 provides authority to subpoena documents from third parties who are not themselves the subject of an investigation, when a valid investigation is otherwise proceeding. The Commission further asserts that it may subpoena documents from third parties whom it might otherwise not be authorized to investigate or proceed against. *See Casey v. FTC, supra,* 578 F.2d at 797–98; *FTC v. Cockrell,* 431 F.Supp. 561, 563–64 (D.D.C.1977). This may indeed be true, but we reject the implication that Section 49 is, therefore, an independent statutory conference of investigative power and we agree with the Second Circuit that such authority, to exist at all, must be derived from Section 46 and be subject to all of the applicable conditions of that Section.

**11.** The court in *Rockefeller II* was concerned with bank holding companies rather than individual banks. The court, however, did not make a distinction between the two for purposes of that appeal. *See Rockefeller II, supra,* 591 F.2d at 189 n. 9.

the court considered the proviso to Section 46 to provide authority for the investigation, observing that the proviso:

> clearly authorized the Commission to "gather and compile information" from, and to "investigate", banks "to the extent that such action is necessary to the investigation" of non-banking targets.

&ast; &ast; &ast; &ast; &ast; &ast;

The Commission's investigatory power is broad, see *United States v. Morton Salt Co.,* 338 U.S. 632, 641–43, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *FTC v. MacArthur,* 532 F.2d 1135, 1140 (7th Cir. 1976), and an enactment clearly intended to augment it, such as the 1973 proviso, should not be strictly or narrowly construed. We believe that the proviso requires only that the ancillary investigation of appellants arise reasonably and logically out of the main investigation of competitive conditions in the energy industry. Cf. *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *United States v. Powell,* 379 U.S. 48, 53–54, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).

591 F.2d at 188 (footnote omitted). The court thus upheld the district court's enforcement of the subpoenas on the ground that the Commission was authorized to seek the material where the banks were not the subject of the principal investigation.

We note that while the Second Circuit's findings that the banks were properly the subject of an "ancillary" investigation may be justified by the particular circumstances of that case, involving, as it did, a broad investigation specifically authorized by the

Congress, no such specific authority supports the action here. Instead we are faced with a more generalized application of the language of Section 46 and of the amendment which Congress made to it in adding the proviso. Further, while the 1973 amendment to Section 46 appears to have been aimed immediately at preserving and defining the Commission's investigative powers against the specifically contemplated investigation of interlocking relationship between the petroleum industry and the financial sector, the proviso obviously has and was intended to have a broader application.[12] Accordingly, we read Section 46, with its amendment, as providing a rather careful course of conduct by the Commission where its investigative powers necessarily collide with the protections accorded the banking industry generally and the primary right to regulate national banking institutions reposed in the Board of Governors of the Federal Reserve Board and in the Comptroller of the Currency, under Section 57a(f).

## II.

 Applying to the facts what we, therefore, perceive to be an appropriate construction of the applicable law, the task becomes essentially a factual one: was the true purpose of the investigation an attempt to investigate and regulate Winters National Bank? If Winters is not the object of the investigation, then the Commission has the power to subpoena documents from it as from any third party.[13] If it is the object, however, the Commission has exceeded its authorization under Section 46.[14]

---

12. Congressional findings in the Act enacting the proviso make it clear that the proviso has general applicability:

> The Congress further finds that as a direct result of this inadequate legal authority significant delays have occurred in a major investigation into the legality of the structure, conduct, and activities of the petroleum industry, *as well as in other major investigations designed to protect the public interest.*

Pub.L. No. 93–153, § 408(a)(2), 87 Stat. 591 (emphasis added).

13. *See* note 10, *supra.* We note, however, that judicial protection against subpoena abuse, an issue *not yet raised by Winters, is* particularly appropriate in matters where information or documents demanded concern third parties. *See, e. g., United States v. Theodore,* 479 F.2d 749, 754 (4th Cir. 1973).

14. Winters argues at some length that the Commission is prohibited from investigating and regulating banks. The Commission concedes this point and indeed, we do not under-

Winters claims that, as a matter of law, it is being so investigated and that this conclusion is compelled by the broad scope of the subpoena itself. Judge Rubin, however, held otherwise. Relying specifically upon *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), Judge Rubin held (1) that the investigation in question is within the authority of the Commission; (2) that the subpoena demand is not so indefinite that it amounts to an unreasonable burden, and (3) that the information sought is reasonably relevant.

■ Significantly, we observe that neither party disputes the specific finding of the district court which describes the genesis of the entire investigation:

> an inquiry was begun on a national scale from the Denver Regional Office of the Commission. A primary, but not exclusive, inquiry was directed to the mobile home industry. In the process of investigation the Commission learned that a company known as Caboose Mobile Homes, located in Cincinnati, Ohio, utilized a contract form lacking appropriate notice as required by the Holder-In-Due-Course Rule. Such form may have been prepared by defendant Winters.

Nowhere in the record do we find any dispute of the specific facts as found by the court, although Winters, of course, disputes the court's inferences therefrom. If, therefore, it is true that the Commission began by investigating the mobile home industry and that it thereby was led to Winters by the route indicated, it seems to follow that the industry and not the bank is the primary target of the investigation. Whether such an investigation under Section 46 has as its object a proper purpose consistent

with the investigative authority conferred upon the Commission by the Congress, or whether it represents an unlawful investigation of a bank, is an issue of fact. We believe that the district court's holding here that Winters was not the target of the investigation is not clearly erroneous and must, therefore, be sustained. Rule 52(a), Fed.R.Civ.P.; *United States v. Held*, 435 F.2d 1361, 1364 (6th Cir. 1970), *cert. denied*, 401 U.S. 1010, 91 S.Ct. 1255, 28 L.Ed.2d 545 (1971).

We recognize, of course, that the facts, and more particularly, the inferences from those facts, are hotly disputed. Thus, the district court, in resolving the question here, could properly have considered the breadth of the language of the Commission's resolution, and also the broad language of the subpoena issued.[15] The court was entitled to recognize, as bearing upon the issue, the fact that the more effective the enforcement of the Holder-In-Due-Course Rule, the greater the inevitable impact upon lending institutions which must thereupon make the hard decision whether to accept paper which contains a waiver of its right as a holder-in-due-course, with all of the additional risk which such a waiver would entail to the bank. Further, the district court was entitled, in weighing inferences from the evidence, to recognize that the most efficient policing of the Rule would come by the direct policing of the lending institutions themselves, and that a powerful motive exists in the Commission to get around the express bans and roadblocks to this end, deliberately established by the Congress.

■ On the other hand, the district judge was entitled to consider the undisputed evi-

---

stand this to be a debatable issue. Where the Commission is investigating a bank, a subpoena issued in furtherance of that investigation is not entitled to enforcement. *Cf. FTC v. Miller*, 549 F.2d 452 (7th Cir. 1977) (subpoena issued to common carrier relating to an investigation of that carrier was not enforced).

15. Winters argues that the subpoena basically seeks information about the bank. For example, Winters contends that

Specification Four requests statistical information regarding the *internal banking practices of WNB*. . . . Specification Five requests information regarding *consumer complaints* received by WNB *and any actions taken in response to those complaints*. . . . Specification Six requests any documents which refer or relate to the *development and implementation of guidelines, policies or plans regarding the Holder-in-Due-Course Rule*.

dence before him that an investigation was under way of the mobile home industry and that the Commission had come upon evidence which indicated that one company in that industry, Caboose Mobile Homes, had been engaged in violations of the Rule through the use of Winters paper which did not contain the required notice. He was therefore entitled to consider that it was not unreasonable for the Commission to have subpoenaed the bank as the best and most efficient source of information to determine the extent to which Caboose and others participated in transactions violative of the Holder-In-Due-Course Rule.[16] He was entitled also to consider that the 1973 amendment to Section 46 appears expressly to have contemplated broad, industry-wide investigations and to have intended that any exemption for the bank, which might otherwise appear in subsections (a) and (b) of Section 46, would not interfere with the actual issuance of subpoenas. Of particular interest in this regard is the specific inclusion in the proviso to Section 46 of the term "industry", indicating further a congressional intent that the subpoena power of the Commission could be and should be employed in its investigation, not only of individual companies or organizations suspected of violations of the Act and Rules thereun-

der, but of industry-wide practices which would in turn require a broader use of subpoena power.

In further support of Judge Rubin's findings, we also note that, as much as it might be hindered by its inability to find a vendor who could be induced to negotiate paper in violation of the Holder-In-Due-Course Rule, Winters cannot itself be in violation of the Rule nor be liable for any sanctions for a violation of that Rule. One, therefore, must ask whether Winters could ever be a target of an investigation, since even if the Commission might take aim at it, the Commission could not hit Winters directly. Finally, we acknowledge the strong policy upholding the validity of the exercise of these powers by a government agency and the historic construction of the powers as broad under *United States v. Morton Salt Co., supra.*

Taking into account all of the circumstances, we conclude that the Commission acted within its authority in issuing the subpoena and that the district court properly entered a judgment enforcing it. In so ruling, we take particular note that Winters has not in these proceedings claimed that enforcement of the subpoena is oppressive

**16.** In response to Winters' argument that the subpoena on its face demonstrates that the bank is being investigated, *see* note 15, *supra,* the Commission argues that:

> Winters' characterizations of the challenged specifications are erroneous. Specification 4 is not focused on the "internal banking practices of WNB" . . . but on the volume of business done by retail sellers provided with, and presumably utilizing, forms that lack the notice required by the Rule . . . . This information would be pertinent to the Commission's formulation of an enforcement policy as to retail sellers. Commission enforcement resources are limited and consequently the agency might wish to focus primarily on those retailers engaged in the largest amount of unlawful financing.
>
> Specification 5 does not involve any consumer complaints against Winters . . . , but only those involving retail sellers and actions taken by the bank in response to the complaints . . . . This information is necessary to determine whether the retailers

> using the nonconforming contracts were in fact attempting to insulate themselves from making consumers whole through noncompliance with the Holder-In-Due-Course Rule. The presence or absence of such an abuse of the Rule might be a factor in determining whether further investigation is warranted. Likewise, specification 6, as modified, does not involve "the development and implementation" of procedures, etc., about the Rule involving the bank generally . . . , but only communications between retail sellers and the bank about such procedures . . . This information is necessary to determine whether the retailers had knowledge of the requirement to have the Holder-In-Due-Course Rule notice in the contracts that were being used and might show the presence or absence of good faith in using the non-conforming contracts.
>
> Thus, while each specification might call for some incidental revelation about the bank, the primary concern of each is the actions of retail sellers.

under the circumstances.[17] Our ruling here, therefore, is necessarily confined to the express issue raised on this appeal, that is, the authority of the Federal Trade Commission to issue a subpoena to a national bank under the circumstances presented.

Affirmed.

**17.** We note that the district judge stated that Winters is not foreclosed from establishing at a later date that the inquiry creates an unreasonable burden. We intimate no view as to whether this ground for objection indeed remains open to Winters or whether it was waived by not being raised in the district court prior to this appeal.