**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**TIVIAN LABORATORIES, INC.,
Defendant, Appellant.**

**No. 78–1109.**

United States Court of Appeals,
First Circuit.

Submitted Sept. 7, 1978.

Decided Dec. 20, 1978.

Richard K. Foster and Foster & Foster, Lincoln, R. I., on brief, for defendant, appellant.

Lincoln C. Almond, U. S. Atty., and Everett C. Sammartino, Asst. U. S. Atty., Providence, R. I., on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Appellant Tivian Laboratories, Inc. challenges the constitutionality of the provisions of the Water Pollution Prevention and Control Act (hereinafter, Water Pollution Act), 33 U.S.C. § 1318(a)(1)(A)(v), and the Air Pollution Prevention and Control Act (hereinafter, Air Pollution Act), 42 U.S.C. § 1857c–8(a)(i)(1)(E) (amended by Act Aug. 7, 1977, Pub.L. No. 95–95 § 305(d) and transferred to 42 U.S.C. § 7414(a)(i)(1)(E)) which authorize the Environmental Protection Agency (EPA) to "require the owner or operator of any [emission or point] source . . . to provide [the agency with] such information as [it] may reasonably require" to carry out its responsibilities under the Acts. These provisions, Tivian contends, violate the fourth amendment's prohibition of unreasonable searches and seizures, the thirteenth amendment's bar against involuntary servitude, and the fifth amendment's guarantee of due process.

Tivian is a small corporation engaged in the production of plating solutions, resins, waxes, and chemical specialties for metal casting and finishing. In October 1975 the EPA sent it a letter, requesting detailed information concerning the .company's acquisition, use, and disposal of polychlorinated biphenyls (PCBs) and comparable chemical substances. The letter stated that the agency was "attempting to determine the sources and amounts of these chemical substances entering the environment" as part of an investigation into "the nature and extent of the possible adverse effects resulting from [their] presence . . . .." Section 1318 of the Water Pollution Act and § 1857c–9 of the Air Pollution Act were cited as the agency's authority for requesting the information.[1]

Tivian persistently refused to comply with EPA's request. In May 1976 the Unit-

1. 33 U.S.C. § 1318 (1972) (amended 1977) states:

"(a) Whenever required to carry out the objective of this chapter, including but not limited to (1) developing or assisting in the development of any effluent limitation, or other limitation, prohibition, or effluent standard, pretreatment standard, or standard of performance under this chapter; (2) determining whether any person is in violation of any such effluent limitation, or other limitation, prohibition or effluent standard, pretreatment standard, or standard of performance; (3) any requirement established under

ed States, on behalf of the EPA and pursuant to its authority under the Acts, commenced suit in federal district court to obtain judicial enforcement of its request, 33

this section; or (4) carrying out sections 1315, 1321, 1342, 1344 (relating to State permit programs), and 1364 of this title—

(A) the Administrator shall require the owner or operator of any point source to (i) establish and maintain such records, (ii) make such reports, (iii) install, use, and maintain such monitoring equipment or methods (including where appropriate, biological monitoring methods), (iv) sample such effluents (in accordance with such methods, at such locations, at such intervals, and in such manner as the Administrator shall prescribe), and (v) provide such other information as he may reasonably require; and

(B) the Administrator or his authorized representative, upon presentation of his credentials—

(i) shall have a right of entry to, upon, or through any premises in which an effluent source is located or in which any records required to be maintained under clause (A) of this subsection are located, and

(ii) may at reasonable times have access to and copy any records, inspect any monitoring equipment or method required under clause (A), and sample any effluents which the owner or operator of such source is required to sample under such clause.

(b) Any records, reports, or information obtained under this section (1) shall, in the case of effluent data, be related to any applicable effluent limitations, toxic, pretreatment, or new source performance standards, and (2) shall be available to the public, except that upon a showing satisfactory to the Administrator by any person that records, reports, or information, or particular part thereof (other than effluent data), to which the Administrator has access under this section, if made public would divulge methods or processes entitled to protection as trade secrets of such person, the Administrator shall consider such record, report, or information, or particular portion thereof confidential in accordance with the purposes of section 1905 of Title 18, except that such record, report, or information may be disclosed to other officers, employees, or authorized representatives of the United States concerned with carrying out this chapter or when relevant in any proceeding under this chapter.

(c) Each State may develop and submit to the Administrator procedures under State law for inspection, monitoring, and entry with respect to point sources located in such State. If the Administrator finds that the procedures and the law of any State relating to inspection, monitoring, and entry are applicable to at least the same extent as those required by this section, such State is authorized to apply and enforce its procedures for

inspection, monitoring, and entry with respect to point sources located in such State (except with respect to point sources owned or operated by the United States)."

42 U.S.C. § 1857c–9 (1972) (amended 1977) states:

(a) Authority. For the purpose (i) of developing or assisting in the development of any implementation plan under section 110 or 111(d) [42 USCS §§ 1857c–5 or 1857c–6(d)], any standard or performance under section 111 [42 USCS § 1857c–6], or any emission standard under section 112 [42 USCS § 1857c–7], (ii) of determining whether any person is in violation of any such standard or any requirement of such a plan, or (iii) carrying out section 303 [42 USCS § 1857h–1]—

(1) the Administrator may require the owner or operator of any emission source to (A) establish and maintain such records, (B) make such reports, (C) install, use, and maintain such monitoring equipment or methods, (D) sample such emissions (in accordance with such methods, at such locations, at such intervals, and in such manner as the Administrator shall prescribe), and (E) provide such other information as he may reasonably require; and

(2) the Administrator or his authorized representative, upon presentation of his credentials—

(A) shall have a right of entry to, upon or through any premises in which an emission source is located or in which any records required to be maintained under paragraph (1) of this section are located, and

(B) may at reasonable times have access to and copy any records, inspect any monitoring equipment or method required under paragraph (1), and sample any emissions which the owner or operator of such source is required to sample under paragraph (1).

(b) Enforcement by State. (1) Each State may develop and submit to the Administrator a procedure for carrying out this section in such State. If the Administrator finds the State procedure is adequate, he may delegate to such State any authority he has to carry out this section (except with respect to new sources owned or operated by the United States). (2) Nothing in this subsection shall prohibit the Administrator from carrying out this section in a State.

(c) Availability of records, reports, and information to public—Disclosure of trade secrets. Any records, reports or information obtained under subsection (a) shall be available to the public, except that upon a showing satisfactory to the Administrator by any person that records, reports, or information, or particular part thereof, (other than emission

U.S.C. §§ 1319(a)(3) & (b) (1972) (amended 1977); 42 U.S.C. §§ 1857c–8(a)(3) & (b)(4) (1970) (amended and transferred in 1977 to 42 U.S.C. §§ 7413(a)(3) & (b)(4)). The United States also sought, pursuant to its authority under the Water Pollution Act, 33 U.S.C. § 1319(d) (1972) (amended 1977), to have civil fines imposed on Tivian for its refusal to supply the data voluntarily.

After pleadings were filed and discovery commenced, the government moved for summary judgment. Tivian responded by challenging the constitutionality of the Acts. At the hearing on the motion, the district court ruled against Tivian on each of its constitutional claims, granted the motion for summary judgment, and ordered Tivian to supply the data sought forthwith. The issue of the assessment of civil penalties was left open until further order of the court. Tivian took a timely appeal, and has been unsuccessful in efforts in this court and below to stay the judgment pending appeal.

The procedure followed by the EPA to obtain information from Tivian was in accordance with the authority conferred upon it under the two Acts. Each Act requires the EPA, in cooperation with other state and federal agencies, to identify and reduce or eliminate the discharge of pollutants into the environment. 33 U.S.C. §§ 1251 et seq. (1972) (amended 1977); 42 U.S.C. §§ 1857 et seq. (1970) (amended and transferred in 1977 to 42 U.S.C. §§ 7401 et seq.) To achieve these objectives, the agency is authorized to request the owner or operator of a company using chemicals which may be hazardous to the environment to supply the agency with whatever information it "may reasonably require" to carry out its statutory responsibilities. 33 U.S.C. § 1318(a)(1)(A)(v); 42 U.S.C. § 1857c–9(a)(i)(1)(E). Upon a company's refusal to comply with

the request, the EPA may go to court to have the request enforced. 33 U.S.C. § 1319(a)(3) & (b); 42 U.S.C. § 1857c–8(a)(3) & (b). It may also seek penalties for violations of the Acts. 33 U.S.C. § 1319(c) & (d); 42 U.S.C. § 1857c–8(c).

Tivian complains that EPA warned it in a letter requesting data that should it fail to provide the data sought, it would be subjected to substantial fines. This attempt by the EPA, allegedly acting in accordance with the Water and Air Pollution Acts, to compel Tivian to produce records without first obtaining a court order or warrant is claimed to have violated appellant's fourth amendment rights.

■ We find Tivian's contention of a fourth amendment violation to be without merit. In making the contention, Tivian misstates the facts. EPA's letter to Tivian did not refer to the penalty provisions of the Acts or even address the issue of non-compliance. Thus, even assuming the matter were of legal consequence, there is no record support for Tivian's assertion that it was threatened with fines prior to the commencement of this suit. Threats or no, the agency's request for information is not enforceable under the Acts, nor may fines be imposed, until a court order is obtained. Consequently, any contention that the Acts permit the EPA, without first obtaining judicial leave, to force Tivian to produce records is simply untrue. The agency may ask for the data without a court order, but must turn to the court to have its request enforced.

■■ The procedure for data gathering authorized by the Water and Air Pollution Acts is similar to another procedure, the issuance of subpoenas duces tecum, which agencies are commonly authorized to use to procure corporate records. Subpoenas duc-

data) to which the Administrator has access under this section if made public, would divulge methods or processes entitled to protection as trade secrets of such person, the Administrator shall consider such record, report, or information or particular portion thereof confidential in accordance with the purposes of section 1905 of title 18 of the

United States Code [18 USCS § 1905], except that such record, report, or information may be disclosed to other officers, employees, or authorized representatives of the United States concerned with carrying out this Act or when relevant in any proceeding under this Act.

es tecum used by agencies to obtain evidence relevant not only to pending charges, but also to investigations into whether charges should issue, have withstood fourth amendment challenges. *See, e. g., Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 201, 208–09, 66 S.Ct. 494, 90 L.Ed. 614 (1946). A subpoena may be issued without first obtaining a court's permission, 327 U.S. at .214, 66 S.Ct. 494, and may be judicially enforced without a showing that probable, or even reasonable, cause exists to believe that a violation of law has occurred. 327 U.S. at 208–09, 66 S.Ct. 494; *Midwest Growers Cooperative Corp. v. Kirkemo,* 533 F.2d 455, 461 (9th Cir. 1976) (dicta); *SEC v. Howatt,* 525 F.2d 226, 229 (1st Cir. 1975); *EEOC v. University of New Mexico,* 504 F.2d 1296, 1303 (10th Cir. 1974); *United States v. DeGrosa,* 405 F.2d 926, 928–29 (3d Cir.), *cert. denied sub nom. Zudick v. United States,* 394 U.S. 973, 89 S.Ct. 1465, 22 L.Ed.2d 753 (1969). In general, what the fourth amendment requires as a condition to enforcement of an agency subpoena is a showing by the agency (1) that its investigation is authorized by Congress and is for a purpose Congress can order and (2) that the documents sought are relevant to the investigation and adequately described. *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. at 208–09, 66 S.Ct. 494; *Midwest Growers Cooperative Corp. v. Kirkemo,* 533 F.2d at 455; *EEOC v. University of New Mexico,* 504 F.2d at 1302–03; *United States v. DeGrosa,* 405 F.2d 926. Tivian has not established that EPA's request fails to meet the grounds in (1), nor does it contend that the requested documents are inadequately described or irrelevant to the agency's investigation. Nothing on the face of the request transgresses these bounds. Hence, we find no fourth amendment violation. *United States v. Morton Salt Co.,* 338 U.S. 632, 652–54, 70 S.Ct. 357, 94 L.Ed. 401 (1950).

■ Tivian's thirteenth amendment challenge is based on the argument that the practical effect of the demand for records is to compel Tivian to incur an otherwise unnecessary expense, overtime wages, so that its employees can find and transmit the requested data while keeping up with their normal duties. Being compelled to incur this expense allegedly constitutes involuntary servitude within the thirteenth amendment. Even assuming, however, that a corporation has rights under the thirteenth amendment and that the amendment is not otherwise inapplicable, we find no violation. The thirteenth amendment "has no application to a call for service made by one's government according to law to meet a public need . . . ." *Heflin v. Sanford,* 142 F.2d 798, 799 (5th Cir. 1944). *See also Abney v. Campbell,* 206 F.2d 836, 841 (5th Cir.), *cert. denied,* 346 U.S. 924, 74 S.Ct. 311, 98 L.Ed. 417 (1954); *Schick v. New Orleans,* 49 F.2d 870, 872 (5th Cir.), *cert. denied,* 284 U.S. 656, 52 S.Ct. 34, 76 L.Ed. 556 (1931); *Bobilin v. Board of Education,* 403 F.Supp. 1095, 1102–05 (D.Hawaii 1975); *St. Louis v. Liberman,* 547 S.W.2d 452, 457 (Mo.) (*en banc*), *cert. denied,* 434 U.S. 832, 98 S.Ct. 116, 54 L.Ed.2d 92 (1977).

■ Tivian's final challenge to the constitutionality of the Water and Air Pollution Acts, that the taking of its records was without the procedural due process required by the fifth amendment, is also without merit. The Acts provide for procedural due process. When Tivian refused to comply voluntarily, the EPA had to institute suit to obtain enforcement of its request. Before compliance was ordered, Tivian received ample opportunity in the district court to contest the request.

■ While we thus find no merit whatever in Tivian's constitutional attacks upon the statutes and the agency's actions, there is one further issue. Tivian insists that it should at least be reimbursed by the EPA for the expenses it will incur (or perhaps has incurred) in retrieving and collating the pertinent data. As this claim was advanced below in a memorandum in opposition to the government's motion for summary judgment, we cannot say that it is presently foreclosed; and we believe it should have been ruled upon by the court below. Tivian, to be sure, stated in its answer and motion to dismiss that it had never used

PCBs nor brought them, or chlorinated terphenyls, into the State of Rhode Island. If this is the case, the effort required to respond to EPA's letter should be minor, even though EPA's letter could impose a very considerable burden upon a company dealing with PCBs in quantity. The letter calls not merely for existing records but for an enormous quantity of detailed information going back several years which might require many hours to collect. In cases where compliance with a subpoena would be oppressive, a district court may impose reasonable restrictions and conditions upon its enforcement of the subpoena. Its power in this regard stems from the requirement that "the disclosure sought shall not be unreasonable." *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. at 208, 66 S.Ct. at 505; *FTC v. Texaco, Inc.,* 180 U.S.App.D.C. 390, 409, 555 F.2d 862, 881 (*en banc*), cert. denied, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977); *Genuine Parts Co. v. FTC,* 445 F.2d 1382, 1390 (5th Cir. 1971). *See also United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *United States v. Davey,* 543 F.2d 996, 1000 (2d Cir. 1976); *cf. SEC v. Howatt,* 525 F.2d at 229.

■ It is only, however, in very extreme circumstances that it is appropriate for a court to impose conditions of this nature and we do not mean to suggest that such circumstances necessarily or indeed are likely to exist here. *FTC v. Texaco, Inc.,* 180 U.S.App.D.C. at 410, 555 F.2d at 882; *SEC v. Savage,* 513 F.2d 188, 189–90 (7th Cir. 1975); *Genuine Parts Co. v. FTC,* 445 F.2d 1382; *see In Re Grand Jury Investigation,* 459 F.Supp. 1338, 1340 (E.D.Pa.1978). "Some burden on subpoenaed parties is to be expected, . . . is necessary in furtherance of the agency's legitimate inquiry and the public interest," *FTC v. Texaco, Inc., supra,* and must be borne as a cost of doing business. *United States v. Friedman,* 532 F.2d 928, 938 (3d Cir. 1976); *see FTC v. Rockefeller,* 441 F.Supp. 234, 242 (S.D.N.Y. 1977). The burden of proving that the request is oppressive is on the party objecting to the agency's request. *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d

112; *FTC v. Texaco, Inc., supra; United States v. Davey,* 543 F.2d 996; *FTC v. Rockefeller, supra.*

■ In the instant case, we merely hold that Tivian is entitled to the ruling of the district court on this limited issue. Given the lengthy delay in complying with EPA's request, we feel that Tivian must take all reasonable steps forthwith to comply with EPA's request, if it has not yet done so. Such compliance is not to be withheld pending the district court's ruling on the collateral cost issue.

The judgment of the district court is affirmed in all respects, except the case is remanded to the district court for the limited purpose of determining Tivian's claim that compliance is so burdensome as to entitle it to reimbursement for the costs of compliance.

*So ordered.*