**UNITED STATES of America, Plaintiff,**

v.

**George LIVIOLA, Jr., et al.,
Defendants.**

**Civ. A. No. C 84–1879 Y.**

United States District Court,
N.D. Ohio, E.D.

March 7, 1985.

Steven D. Bell, Asst. U.S. Atty., Cleveland, Ohio, Helen J. Brunner, Environmental Enforcement Section, Land and Natural Resources Division, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

George Liviola, Jr., Ashtabula, Ohio, Henry A. Roth, Cleveland, Ohio, for defendants.

## MEMORANDUM

ANN ALDRICH, District Judge.

The United States brings this civil action for injunctive relief and penalties for violations of two environmental statutes, the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA"), and the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"). Based on the undisputed facts and applicable law as set forth below, the United States' motion for partial summary judgment on the issue of liability is granted.

Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1345 and 1355 and 42 U.S.C. §§ 6928 and 9613. Venue is proper pursuant to 28 U.S.C. § 1391 and 42 U.S.C. §§ 6928 and 9613.

### I.

Fed.R.Civ.P. 56(c) governs summary judgment motions and provides:

... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

Important guidance on the nature of materials properly presented in a summary judgment pleading is contained in Fed.R. Civ.P. 56(e):

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Hasan v. CleveTrust Realty Investors, Inc.*, 729 F.2d 372 (6th Cir.1984). "[T]he party seeking summary judgment must *conclusively* show that there exists no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Bender v. Southland Corp.*, 749 F.2d 1205, 1210 (6th Cir.1984) (citing *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979) (emphasis in original). The undisputed facts follow.

### II.

This action concerns the New Lyme Landfill in New Lyme Township, Ashtabula County, Ohio ("New Lyme Site" or "the site"). Environmental Control Corporation ("ECC") operated the site from 1970 to 1976, and defendant Jack Webb was in charge of its operations. Defendants George Liviola, Jr. and Norrell E. Dearing are partners in Ashtabula County Reclaimed Lands ("ACRL"), a partnership which operated the site as a landfill for the disposal of household, commercial and in-

dustrial wastes from June 28, 1976 through August 6, 1978. Liviola and Dearing are also corporate officers of defendant Ashtabula County Septic and Waste Services, Inc. ("ACSW", also known as Ashtabula County Waste), which transported wastes to the New Lyme Site from June 28, 1976 through August 6, 1978. Liviola purchased the site in 1977 and was exclusively responsible for operation of the landfill since May of that year.

During 1977 and 1978, ACSW transported from the Lord Corporation plant in Saegertown, Pennsylvania to the New Lyme Site drummed wastes, including solvent recovery still bottoms, xylene, methyethyl ketone, perchloroethylene and trichloroethylene. It also transported from the Stackpole Corporation site in St. Mary's, Pennsylvania to the New Lyme Site liquid industrial chemical wastes including waste acetone, trichloroethylene, paints, resins, coal, tar distillates and discarded commercial chemical products. All the materials ACSW transported are deemed to be hazardous wastes and hazardous substances under RCRA and CERCLA. (Later investigations by the Environmental Protection Agency ("EPA") revealed the presence of thirty-two toxic materials at the New Lyme Site.)

By 1982, EPA had reason to believe that hazardous substances were present at the site. Tests revealed that nearby surface waters and groundwater were contaminated with phenols. Allegations were made that drummed cyanide wastes were disposed of at the site. EPA responded by placing the New Lyme Site on its National Priorities List—a list prepared by EPA in consultation with the states which identifies approximately 400 of the nation's most hazardous waste sites.

On May 27, 1983, Basil Constantelos, an EPA employee properly designated under RCRA and CERCLA, sent certified letters to Liviola, ACRL and ACSW requesting information concerning the type, amount and source of waste materials transported to and disposed of at the site. In June of 1983, Liviola requested an extension of the time available to respond to the EPA request, claiming that records concerning the site were scattered and disorganized. EPA granted Liviola an additional twenty days to comply with its request. Liviola did not produce the requested information. EPA issued a second request. In addition, when EPA agents conducted tests at the New Lyme Site later in 1983, they informed Liviola that the agency still needed the documents requested in May. Liviola claims that he "continued working on examining and sifting the documents as time and health would allow," but never produced them.

On June 4, 1984, the United States commenced this action. Three months later, the requested documents were finally supplied to the EPA. In the pending motion, the United States seeks partial summary judgment against Liviola and ACSW.

### III.

#### A.

Enacted in 1976, RCRA requires EPA to develop regulations governing the generation, transportation, treatment, storage, and disposal of hazardous wastes. To enforce its regulations, EPA is authorized to conduct inspections and gather information from individuals and entities involved with hazardous wastes. Title 42 U.S.C. § 6927 provides in part:

> ... For purposes of developing or assisting in the development of any regulation or enforcing the provisions of this chapter, any person who generates, stores, treats, transports, disposes of, or otherwise handles, or has handled hazardous wastes shall, upon request of any officer, employee or representative of the Environmental Protection Agency ... furnish information regarding such wastes....

This provision is modeled on substantially similar language in the Clean Air Act, 42 U.S.C. § 7413, and the Clean Water Act, 33 U.S.C. § 1318. Under the definitional sections of RCRA, the defendants are proper parties for an information request, and the

materials EPA had reason to believe were present at the New Lyme Site (and later found there) are hazardous wastes. 42 U.S.C. § 6903.

CERCLA was enacted in 1980 and established a "Superfund" to finance environmental improvements at hazardous waste sites. Under CERCLA, the EPA may sue for injunctive relief and spend Superfund appropriations to investigate and remedy hazardous waste sites. It may also seek information and documents under a provision similar to that in RCRA. Title 42 U.S.C. § 9604(e)(1) provides:

> ... For purposes of assisting in determining the need for response to a release or threatened release [of a hazardous substance] ... or enforcing the provisions of this subchapter, any person who stores, treats, or disposes of, or, where necessary to ascertain facts not available at the facility where such hazardous substances are located, who generates, transports or otherwise handles or has handled hazardous substances shall upon request ... furnish information relating to such substances ...

"Hazardous substances" under CERCLA include "hazardous wastes" covered by RCRA. 42 U.S.C. § 9601. And, as under RCRA, the defendants were proper parties to whom EPA could direct a request for information.

In cases where requests for information are rebuffed, the EPA's remedies are governed by 42 U.S.C. § 6928. That provision authorizes administrative compliance orders, criminal prosecutions, and civil actions. As it relates to this civil action, the law states:

> (a)(1) ... [W]henever on the basis of any information the Administrator determines that any person is in violation of any requirement of this subchapter, the Administrator may issue an order requiring compliance immediately or within a specified time period *or the Administrator may commence a civil action in the United States district court in the dis-*

*trict in which the violation occurred for appropriate relief, including a temporary or permanent injunction.*

> \*    \*    \*    \*    \*    \*

> (g) Any person who violates any requirement of this subchapter shall be liable to the United States for a civil penalty in an amount not to exceed $25,-000 for each such violation. Each day of such violation shall, for purposes of this subsection, constitute a separate violation.

(Emphasis added.) Title 42 U.S.C. § 9613(b) provides for district court jurisdiction in controversies arising under CERCLA (other than review of EPA regulations).

**B.**

■ Generally, an administrative agency's request for information will be enforced where: (1) the investigation is within the agency's authority; (2) the request is not too indefinite; and (3) the information requested is reasonably relevant. *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *EEOC v. A.E. Staley Mfg. Co.*, 711 F.2d 780, 783 (7th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1907, 80 L.Ed.2d 456 (1984) (and cases cited therein); *United States v. Deak-Perera & Co.*, 566 F.Supp. 1398 (D.D. C.1983). The EPA was entitled to request information from the defendants, its request was reasonable, and its request was flaunted. Accordingly, this action for injunctive relief and penalties is appropriate.

■ Defendants contend that they did not violate the applicable statutes because their failure to comply with the information request was not willful, because the penalties of § 6928(g) do not apply to failure to provide records requested pursuant to § 6927(a), and because penalties may only

issue after failure to obey a compliance order. Each argument is without merit. As the United States notes, the explicit language of RCRA requires willful intent only for criminal penalties under §§ 6928(d) and (e); had Congress desired to impose such a prerequisite for civil penalties, it would have done so. Instead, Congress patterned the civil violation provisions of RCRA after the Clean Air Act and Clean Water Act, under which civil penalties are strict liability offenses not requiring proof of willful intent. Liviola's professed lack of intent to violate the law is irrelevant. *Sierra Club v. Abston Construction Co., Inc.,* 620 F.2d 41 (5th Cir.1980); *United States v. Earth Sciences, Inc.,* 599 F.2d 368 (10th Cir.1979); *United States v. Bradshaw,* 541 F.Supp. 884 (D.Md.1982).

█ Turning to the applicability of § 6928(g), it is clear that § 6927(a) imposes a "requirement of this subchapter" for purposes of § 6928(g), and that EPA need not issue a compliance order or administrative subpoena prior to seeking civil penalties. The statutory language is clear, conclusive, and consistent with the legislative history. S.Rep. No. 96–172, 96th Cong., 1st Sess. 3–4, reprinted in 1980 U.S.Code Cong. & Admin.News 5019, 5021–22. Finally, since it is patterned after provisions in the Clean Air Act and the Clean Water Act, § 6928(g) is to be read consistently with cases allowing imposition of civil penalties for violations of those statutes regardless of whether EPA issued a compliance order. *United States v. Tivian Laboratories, Inc.,* 589 F.2d 49 (1st Cir.1978), *cert. denied,* 442 U.S. 942, 99 S.Ct. 2884, 61 L.Ed.2d 312 (1979); *United States v. Earth Sciences, Inc.,* 599 F.2d at 375.

## IV.

The objections to the United States' motion being unpersuasive, partial summary judgment on the issue of liability is entered against Liviola and ACSW.

IT IS SO ORDERED.