**UNITED STATES of America,**
**Plaintiff, Appellee,**

v.

**CHARLES GEORGE TRUCKING CO.,**
**et al., Defendants, Appellees,**

**Charles George, Sr. and Dorothy**
**George, Defendants, Appellants.**

**No. 87–1039.**

United States Court of Appeals,
First Circuit.

Heard June 3, 1987.

Decided July 13, 1987.

Bruce F. Smith with whom Lisa Renee Schwartz, Jager, Smith & Stetler, Richard E. Bachman and Hale, Sanderson, Byrnes & Morton, Boston, Mass., were on briefs, for appellants.

Elizabeth Ann Peterson, Dept. of Justice, Washington, D.C., with whom Joseph J. McGovern, Boston, Mass., and David C. Shilton, Dept. of Justice, F. Henry Habicht, II, Asst. Atty. Gen., Washington, D.C., Robert S. Mueller, III, U.S. Atty., and Andrew Lauterback, Sp. Asst. U.S. Atty., Boston, Mass., were on brief, for the U.S.

Before COFFIN, DAVIS* and SELYA, Circuit Judges.

SELYA, Circuit Judge.

The defendants-appellants, Charles George, Sr. and Dorothy George, husband and wife, challenge a judgment for civil penalties entered against them in an action prosecuted by the United States on behalf of the federal Environmental Protection Agency (EPA). For the reasons set forth below, we affirm.

## I. BACKGROUND

From 1971 to 1983, Mr. and Mrs. George, and at least some of their children, were shareholders and trustees of a hazardous waste dump in Tyngsboro, Massachusetts, somewhat grandiloquently known as the "Charles George Land Reclamation Trust Landfill".[1] In the course of investigating the feared contamination of Tyngsboro's water supply, the EPA sent each appellant a written request for information concerning the landfill and its operation. These letters were transmitted pursuant to the dual authority of § 3007 of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6927,[2] and § 104 of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9604,[3] and were received on February 4, 1985. (Inasmuch as the two letters were substantially identical, we shall henceforth refer to the pair in the singular.) After referencing the statutes, the communique informed the addressee that,

[f]ailure to respond to [the questions] within thirty (30) days of receipt of this letter, or to adequately justify such failure to respond, can result in enforcement action by the EPA pursuant to § 3008 of the [RCRA] under which the EPA may seek the imposition of penalties of up to $25,000 for each day of continued non-compliance.

This warning fell on deaf ears. During the next thirty days, the appellants neither replied to the questionnaire nor lifted a finger to explain their silence. On March 6, 1985, the sleeping dragon awoke—or at least stirred; the Georges, through their

---

* Of the Federal Circuit, sitting by designation.

1. Although the children, a family corporation, and various other persons were also named as defendants when suit was started, we are concerned only with the appellants before us, Mr. and Mrs. George. Thus, we omit any account of the travel of the litigation as to other parties.

2. 42 U.S.C. § 6927(a) states in relevant part:

For purposes of developing or assisting in the development of any regulation or enforcing the provisions of this chapter, any person who generates, stores, treats, transports, disposes of, or otherwise handles or has handled hazardous wastes shall, upon request of any officer, employee or representative of the Environmental Protection Agency, duly designated by the Administrator, or upon request of any duly designated officer, employee or representative of a State having an authorized hazardous waste program, furnish information relating to such wastes and permit such person at all reasonable times to have access to, and to copy all records relating to such wastes.

3. 42 U.S.C. § 9604(e)(1) states in relevant part:

For purposes of assisting in determining the need for response to a release under this subchapter or enforcing the provisions of this subchapter, any person who stores, treats, or disposes of, or, where necessary to ascertain facts not available at the facility where such hazardous substances are located, who generates, transports, or otherwise handles or has handled hazardous substances shall, upon request of any officer, employee, or representative of the President, duly designated by the President, or upon request of any duly designated officer, employee, or representative of a State, where appropriate, furnish information relating to such substances and permit such person at all reasonable times to have access to, and to copy all records relating to such substances.

attorney, requested an additional sixty days within which to answer "in order to respond accurately and fully to [the] request." The EPA rebuffed this entreaty, and urged the appellants to reply as promptly as possible so as to avoid or minimize noncompliance penalties. This admonition brought only a further plea for an extension, also refused by the EPA. The appellants' subsequent promise that they would "continue to search for and review their records in order to respond as fully and expeditiously as possible to the information request" was honored only in the breach. The inquiries went unanswered.

At no time during this pre-litigation pavane did the Georges claim that the agency was acting in excess of its authority, or that they were legally entitled to spurn the request. At no time did they attempt "to adequately justify" their unreceptiveness. Repeated demands by the government proved entirely futile, as the appellants continued along the course they had charted: disdaining any substantive response and equally disdaining any meaningful explication of a possible excuse for their inaction.

The EPA, its patience exhausted, filed a complaint in the United States District Court for the District of Massachusetts on June 13, 1985 against the appellants and other parties in interest. *Inter alia*, the suit sought (i) a finding that, in failing to respond to the letter, the defendants had violated both the RCRA and the CERCLA, (ii) an order insuring compliance with the information request, and (iii) the imposition of penalties under the RCRA, to wit, 42 U.S.C. § 6928(g).[4] In due course and after a hearing, the district court granted the government's motion for partial summary judgment against the appellants on these issues. *United States v. Charles George Trucking Co.*, 624 F.Supp. 1185 (D.Mass.

1986). Although determining that seven of the twenty-six questions contained in the letter were insufficiently relevant to require a response, *id.* at 1187–88, the court found the remainder of the inquiries to be entirely appropriate. *Id.* It held that the appellants' failure to make a timely rejoinder transgressed both CERCLA and RCRA, and that liability vested under § 6928(g). *Id.* at 1188. Accordingly, the Georges were ordered to answer nineteen of the queries and were adjudged liable for civil penalties. *Id.* at 1188–89. The amount of the penalties was fixed by the district court in a later proceeding, wherein these two defendants were fined $20,000 apiece for their intransigent failure to reply. A judgment was entered and this appeal followed apace.[5]

The arguments which Mr. and Mrs. George make before us marshall themselves into two lines of attack. They contend, first, that RCRA § 6928(g) is a weapon reserved to combat actual despoilers of the planet, and cannot be used to punish those who commit purely paperwork offenses. A classic example of the exempted group, as described by the appellants, would be persons who, like themselves, have been found guilty only of failing to respond to information requests issued pursuant to 42 U.S.C. § 6927(a), but not of any illegal disposal or of causing harm to the environment. Alternatively, the Georges assert that the accrual and imposition of penalties under § 6928(g) without prior judicial approval of the information request and the issuance of a court order mandating answers, comprises a preemptive strike banned by the fourth and fifth amendments to the federal Constitution.

We consider these asseverations *seriatim*.

---

**4.** 42 U.S.C. § 6928(g) states:

Any person who violates any requirement of this subchapter shall be liable to the United States for a civil penalty in an amount not to exceed $25,000 for each such violation. Each day of such violation shall, for purposes of this subsection, constitute a separate violation.

**5.** The appellants—after a display of further laggardness—eventually responded to the request (as modified by the district court's order) on March 19, 1986. They do not now challenge either the EPA's authority to pose the nineteen questions or the correctness of the decree directing them to answer. On appeal, they contest only the imposition of civil penalties.

## II. THE REACH OF THE RCRA PENALTY PROVISION

■ In arguing that 42 U.S.C. § 6928(g) stops shy of reaching violators of RCRA's information access provision, 42 U.S.C. § 6927(a), the appellants' contentions are reminiscent of a mirage in the shimmering heat of the desert: the closer one approaches, the less substantial the assertions seem. Eventually, on close perscrutation, they vanish entirely. The basic problem is that the Georges would have us deny the clear and unambiguous language of the statute and, in the bargain, ignore well established interpretive canons. We are disinclined to do so.

We start—as all statutory construction must start—by looking at the language of the law, in this instance 42 U.S.C. § 6928(g), quoted *supra* n. 4. It is as plain as the nose on one's face that the RCRA information access provision, quoted *supra* n. 2, is a part of the "subchapter" to which § 6928(g) expressly refers. This verity, one would think, makes it abundantly clear that § 6928(g) applies to infractions of § 6927(a), and thus controls the case at bar. Yet, notwithstanding the inexorable purport of these interlocking statutes, the Georges grope past the letter of the law into its legislative history in a clumsy attempt to muddy the waters. Inasmuch as the annals of Congress indicate that § 6928(g)'s addition to the RCRA in 1980 was as part of a package of amendments geared, to some degree, toward curbing the problem of "midnight dumping," [6] their thesis runs, the provision's tentacles should not—irrespective of the language used in the Act—extend beyond violations of that nature. The appellants try to capitalize upon what they see as a void in the legislative history: the absence of any expression of an intent to link § 6927(a) and § 6928(g). Using this as a bootstrap, they ask us to limit the applicability of § 6928(g) as a tool to enforce other provisions of the subchapter not dealing directly with active polluters.

The appellants' posturing reduces to a suggestion that we look to the language of the statute secondarily rather than primarily, giving sway to our conception of the legislative intent rather than to the words which Congress chose to employ. So viewed, the position is an untenable one. "In determining the scope of the statute, we look first to its language." *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Where, as here, that language points unerringly in a single direction, and produces an entirely plausible result, it is unnecessary—and improper—to look for other signposts or to browse in the congressional archives. *United States v. Meyer*, 808 F.2d 912, 915 (1st Cir.1987). As we have said before, "Such use of the legislative history would ... be contrary to the well-established rule that a court 'will resort to the legislative history and other aids of statutory construction only when the literal words of the statute create ambiguity or lead to an unreasonable interpretation.'" *Massachusetts Financial Services, Inc. v. Securities Investor Protection Corporation*, 545 F.2d 754, 757 (1st Cir.1976) (quoting *Araya v. McLelland*, 525 F.2d 1194, 1195–96 (5th Cir.1976)). So long as the statutory language is reasonably definite, that language must ordinarily be regarded as conclusive (at least in the absence of an unmistakable legislative intent to the contrary). *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 110, 103 S.Ct. 986, 990, 74 L.Ed.2d 845 (1983); *United States v. Turkette*, 452 U.S. at 580, 101 S.Ct. at 2527; *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In the case before us, the statutory command is clear as a bell—and its melody is

---

**6.** *See, e.g.,* S.Rep. No. 172, 96th Cong., 2d Sess. 1, 3–4, *reprinted in* 1980 U.S.Code Cong. & Amin.News 5019, 5022 ("This provision is aimed at stopping so-called 'midnight dumping' which may not continue at any location for more than 30 days and to seek penalties for single occurrences, rather than just continuing offenses."). In the lexicon of toxic wastes, "midnight dumping" is the act of disposing of hazardous residues without a permit to do so, usually surreptitiously (and often under cover of darkness).

unmuffled by any discordant legislative undertone.[7]

It is only where the sound of the legislative trumpet is muted or uncertain that judges must interpret—and in interpreting, create. But where the call is a clarion one, the courts have no warrant to rewrite a statute in the guise of "interpretation." And to do so in this case would be doubly wrong: succumbing to the appellants' blandishments would require us not only to override the plain meaning of straightforward language, but also to flout a major congressional aim of the RCRA—giving the EPA the legislative wherewithal to establish and enforce regulations governing the generation, transportation, handling, treatment, storage, and disposal of toxic wastes. Information is knowledge, and knowledge is power. By authorizing the agency to mount inspections and to collect information from persons and entities involved with hazardous residues, § 6927(a) directly facilitates the government's ability to battle the polluters and the despoilers—the very persons who, the appellants concede, are the principal targets of the subchapter. Put another way, unless the civil penalty provision of the RCRA is applicable to those who refuse to honor the EPA's inquisitorial authority under § 6927(a), the agency will be severely—indeed, unduly—handicapped in its attempt to effectuate needed regulation of the "treatment, storage, transportation and disposal of hazardous wastes which have adverse effects on health and the environment." 42 U.S.C. § 6902(4).

We decline the Georges' invitation to rewrite the statute and to stunt its purview. We hold that the information access provision, § 6927(a), is a "requirement" of the RCRA for purposes of § 6928(g)—and as such, a breach of it triggers the penalty provision. *Accord United States v. Liviola,* 605 F.Supp. 96, 100 (N.D.Ohio 1985).

## III.  CONSTITUTIONAL CLAIMS

The appellants maintain that, even if civil penalties lie as against violators of the information access provision, the use of such a sanction by the EPA in the circumstances of this case was so coercive that it impinged upon rights secured by the fourth and fifth amendments to the federal Constitution.

Under § 6927(a), the EPA is authorized to seek only that information which relates to hazardous wastes. The Georges now assert that they failed to make a timely response to the EPA's letter because they believed that the questions impermissibly delved into unrelated areas. In fact, the district court, after a hearing on the matter, relieved them of the burden of answering seven of the twenty-six queries propounded by the EPA. They would have challenged the propriety of the questions earlier, they contend, but for the spectre of daily accrual of penalties under the RCRA—a threat which, in their eyes, put them in the no-win position of having to choose between asserting their right to make that challenge, on the one hand, and freedom from the unwelcome prospect of huge per diem penalties, on the second hand. Such pressure, they submit, exposed them to the functional equivalent of an unreasonable search and abridged their right to procedural due process.

We do not agree. Passing the obvious question as to how inertia assuaged their plight—after all, if the appellants were fearful of the imposition of progressive daily-rate penalties, they were on any reckoning marching straight into the lion's den by ignoring the information request—it is clear that, in this case, EPA's questionnaire and the accompanying notice neither subjected the Georges to an illegal search nor deprived them of an opportunity to be

---

7. Although we find it unnecessary in this instance to set out the background of the statutes in exquisite detail, we do note that we have discovered nothing in the legislative history of § 6928(g) which comes close to comprising a "clearly expressed legislative intent", *Consumer Product Safety Comm'n,* 447 U.S. at 108, 100 S.Ct. at 2056, at odds with the "plain meaning" construction urged by the government, adopted by the district court, and welcomed by us. The opposite is true: as we show in the text, application of the civil penalty provision to transgressions of the information access statute materially furthers the overall objectives of the RCRA.

heard at a reasonable time and in a reasonable manner.

In essence, the appellants argue that the statutory scheme left them no fair choice: if they refused to honor the information request, they exposed themselves to a penalty "not [to] exceed $25,000 for each ... violation...." 42 U.S.C. § 6928(g). And if they blindly went along with responding to the missive, they would have lost the benefit of any legitimate defenses they might have had to invasion of their privacy or to disgorgement of the material. Although the appellants cloak this argument variously in the raiment of the fourth and fifth amendments, it depends in the last analysis upon the applicability of the doctrine espoused in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a case wherein the Court decided that a statutory mosaic abridges a party's constitutional rights if "the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate [the affected person] from resorting to the courts to test the validity of the legislation...." *Id.* at 147, 28 S.Ct. at 449. But *Young*, fairly read, does not cast doubt upon the validity of the penalties imposed on Mr. and Mrs. George.

In the first place, the appellants' plaint is factually flawed. It is manifestly inaccurate to insist that they were offered no contemporaneous chance to protest the EPA's request. The reverse is true: the letter presented them with timely notice and a meaningful opportunity to object. It clearly stated that "failure to respond ... *or to adequately justify such failure to respond,....*" (emphasis supplied) could result in the bringing of an enforcement action. Despite this open invitation to voice good faith reasons—if there were any—for eschewing a reply, the Georges stood mute. They raised no grounds to justify, or try to justify, a refusal to answer. As respects most of the nineteen questions currently in issue, they still, at this late date, have been unable to cite any colorable basis for wiggling out of the grasp of § 6927(a). Indeed, they conceded before the district court that they were legally "required to answer the ten EPA information requests which seek descriptions of the hazardous substances dumped at the landfill and of the manner in which such substances were handled." 624 F.Supp. at 1187.

To be sure, Mr. and Mrs. George did seek extensions of time from the EPA in order to "respond accurately and fully to [the EPA's] request." Yet, the tenor of such entreaties reflected no concern about the validity of the questions posed, the scope of the interrogation, or the respondents' duty to answer. To the contrary, seeking time to permit the preparation of an "accurate[ ] and full[ ]" rejoinder seems logically to suggest awareness that the inquiries were in order. In any event, the hunt for an extension appears plainly to have been a stalling tactic; no answers were generated until well after the enforcement action had been commenced—in all, some thirteen months after the government first sought the data. *See supra* n. 5. And when filed, the responses were so skeletal and uninformative as to suggest strongly that research time had never been a serious consideration.

During the period of more than four months between the date they received the information request and the date the United States sued, the appellants played ostrich—burying their heads in the sand, and hoping that the EPA would go away. In that lengthy interval, the Georges neither requested an administrative or judicial hearing about the matter nor otherwise indicated any wish to contest the legality of the inquiries. Having behaved in so struthious a fashion and having abnegated the offer to be heard—"to adequately justify [any] failure to respond"—their present plea comes to us with a peculiarly weak claim to constitutional protection. We agree with the district court that, once failing to interpose timely objection through the administrative procedure which had been provided and of which they had received due notice, the appellants must pay the forfeit. A party who is aware of, and chooses to ignore, an available avenue for redress cannot later be allowed to characterize his refusal to travel

the road as tantamount to the road being closed—or to no road being in existence. *Cf. Dusanek v. Hannon*, 677 F.2d 538, 542–43 (7th Cir.1982) ("The availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure.").

Perhaps, as Mr. and Mrs. George exhort, the district court misspoke when it observed that the defendants were "estopped from now arguing that they were deprived of a meaningful opportunity to be heard." 624 F.Supp. at 1189. For our part, we view what transpired as a waiver;[8] yet, the substance of the district court's observation was palpably correct. It is settled that a waiver may be inferred "from conduct or from a collocation of the circumstances," *Irons v. FBI*, 811 F.2d 681, 686 (1st Cir. 1987), if the action—or inaction—is " 'so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of [the] conduct is possible.' " *Id.* (quoting *Bechtel v. Liberty National Bank*, 534 F.2d 1335, 1340 (9th Cir.1976)). Inasmuch as the appellants were on notice of the way prescribed by the EPA for them to justify the lack of a timely response, their unexplained—and inexplicable—failure to avail themselves of the opportunity can only be seen as proof that they intended to forgo it. And, having waived their opportunity to be heard at a time and in a manner when being heard would have been effective, the appellants are, in that sense at least, the authors of their own misfortune.

Beyond the matter of waiver, however, we find the issues which the Georges seek to pose to be largely hypothetical. There is no indication that, had they timely asserted an objectively reasonable justification for refusing to respond—that is, some plausible basis to buttress a claim that the EPA's information demand was either a nullity or otherwise unenforceable—the

statutory scheme would have permitted the snowballing of daily penalties pending judicial resolution of the merits of the objection. The caselaw in comparable instances suggests otherwise. *E.g., Oklahoma Operating Co. v. Love*, 252 U.S. 331, 338, 40 S.Ct. 338, 340, 64 L.Ed. 596 (1920) (rolling penalties should not accrue during litigation if the affected party had "reasonable ground to contest them"); *Solid State Circuits, Inc. v. EPA*, 812 F.2d 383, 391 (8th Cir.1987) (treble damages under CERCLA § 107(c)(3) "may not be assessed if the party opposing such damages had an objectively reasonable basis for believing that the EPA's [clean-up] order was either invalid or inapplicable to it") (footnote omitted); *United States v. Pacific Coast European Conference*, 451 F.2d 712, 719 (9th Cir. 1971) (defendants not subject to statutory penalties during test period where they had promptly "mounted a substantial attack upon the validity of the statute and [Federal Maritime Commission] order"). Some cases intimate that a good faith defense, timely asserted and earnestly pursued, may be enough to stay the accumulation of punitive sanctions even if the defense ultimately proves inadequate to pass an objective test of reasonableness. *E.g., Aminoil, Inc. v. United States*, 646 F.Supp. 294, 296–99 (C.D.Cal.1986). On this appeal, however, we have no need to split such fine hairs. Whether the criterion be an objective or a subjective one—a question we leave for another day—the Georges failed to fulfill it.

The instant appeal totters on this point for another reason as well. Despite the statutory *potential* for the imposition of retrospective rolling penalties, that mechanism was not activated in the Georges' case. Assuming for the sake of argument that the EPA's actions in formulating the initial inquiry implicated some constitutionally protected property or liberty interest enjoyed by the appellants, it is clear that adequate notice and a meaningful opportu-

---

**8.** The distinction can, at times, be a fine one. Generally speaking, an estoppel can be considered as an inhibition to assert some known right while a waiver can be considered as the voluntary surrender or relinquishment of such a right. Black's Law Dictionary 650–51 (4th ed. 1968).

nity to respond were afforded them by the EPA in the first instance. And, the Georges received far more: their responses were compelled, and the penalties imposed, only after an in-court hearing replete with all of the safeguards that ordinarily attend the judicial process.

In *United States v. Tivian Laboratories, Inc.,* 589 F.2d 49 (1st Cir.1978), we held that a governmental call for information, coupled with the threat of an action to impose penalties for failure to respond under the Federal Water Pollution Prevention and Control Act, 33 U.S.C. § 1318, and the then-current version of the Air Pollution Prevention and Control Act, 42 U.S.C. § 1857c–9,[9] did not offend the fourth amendment since "the agency's request for information is not enforceable under the Acts, nor may fines be imposed, until a court order is obtained." In its current configuration, this case is postured in precisely the *Tivian* mold. The EPA did not seek unilaterally to levy retrospective daily-rate fines against the Georges pending ultimate resolution of a good faith refusal to answer. Rather, confronted with stony silence—the absence of justification, as it were—the agency petitioned the district court both for enforcement of the information request and for appropriate sanctions. In imposing a penalty after hearing, the district judge did not resort to the per diem accrual allowed by statute, but ordered each appellant to pay a flat sum of $20,000 —a sum well below the statutory maximum applicable to a single day's violation. Seen in this perspective, the distinctions between this case and *Tivian* do not make a difference.

In short, we find the Georges' constitutional jeremiad to have absolutely no basis in law or in fact. While the procedural requirements imposed by the due process clause of the fifth amendment are essentially those of notice and an opportunity to respond, *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985), there is no precise set of steps which must universally be taken preliminary to the deprivation of any and all constitutionally protected interests. Rather, the ways of due process are "flexible and variable dependent upon the particular situation being examined." *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). The prophylaxis which was extended to the Georges by the EPA in this instance was fully adequate to meet the rigors of the Constitution. That the appellants were inattentive to the situation does not detract from the fact that their rights were procedurally protected in full measure. The imposition of fines under the circumstances of this case in no way offended either the fourth or fifth amendments.

## IV.  CONCLUSION

The appellants do not deny that they breached the information access provision of the RCRA, 42 U.S.C. § 6927(a), without any substantial justification. When the government made the information request, and thereafter when it decided to blow the whistle, the appellants received all the process they were due. The district court correctly discerned that the penalty provisions of 42 U.S.C. § 6928(g) applied full bore to such infractions. And the court, in ordering the information requests to be answered and in fining Mr. and Mrs. George in consequence of their obduracy, acted well within its statutory authority.

We need go no further. The judgment entered below must be, and hereby is,

*Affirmed.*

---

**9.** The Air Pollution Prevention and Control Act was revised and reclassified in 1977. Former § 1857c–9 now appears as 42 U.S.C. § 7414.