STATE OF MAINE
CUMBERLAND, ss.
SUPERIOR COURT
CIVIL ACTION
Docket No. AP-2021-18

CLEAN ENERGY FOR ME, LLC,

Petitioner,

v.

MAINE COMMISSION ON
GOVERNMENTAL ETHICS AND
ELECTION PRACTICES,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**RULE 80C DECISION**

REC'D CUMB CLERKS OFC
JAN 3 '22 PM 1:17

Petitioner Clean Energy for ME, LLC, a/k/a Stop the Corridor ("STC") seeks judicial review, pursuant to M.R. Civ. P. 80C, of the July 2, 2021 decision of Respondent Maine Commission on Governmental Ethics and Election Practices ("the Commission") not to modify the scope of a subpoena issued by the Commission on March 16, 2021. For the following reasons, the Court denies STC's appeal.

I.    **Background**

In 2018, STC was formed as a Maine limited liability company for the purpose of opposing the New England Clean Energy Connect ("NECEC") transmission line project. (R. 13, 33-35.) On January 17, 2020, the Commission received a request that the Commission investigate STC for allegedly failing to register as a political action committee ("PAC") when it became involved in the campaign to place a referendum question opposing the NECEC project on the November 2020 ballot ("the Ballot Question"). (R. 31, 137.) The Commission considered the request to investigate at its

March 10, 2020 meeting and voted to authorize an investigation into whether STC should have registered as a PAC.[1] (R. 154-64.)

Based on preliminary information obtained from STC during the investigation, Commission staff recommended also investigating whether STC should have registered as a ballot question committee ("BQC"). (R. 174.) After hearing at the Commission's May 2020 meeting, the Commission voted to expand the scope of the investigation. (R. 174-81.)

On February 1, 2021, STC produced documents in response to a subpoena issued by the Commission. (R. 139.) From the documents, the Commission learned of certain business transactions between STC and two entities ("the Nonparty Entities") that involved transfers of money while efforts related to the Ballot Question were underway. (R. 143-44.) On March 16, 2021, the Commission issued a second subpoena ("the Subpoena").[2] (R. 2-4.) The Subpoena contained Requests Nos. 5 and 6, which sought all documents relating to the Nonparty Entities or entities funded by or through the Nonparty Entities. (R. 3.) On April 16, 2021, STC filed objections to the Subpoena with the Commission. (R. 9-11.)

The Commission considered STC's objections as a request to modify at its June 11, 2021 meeting and June 18, 2021 meeting. (R. 12, 99.) The Commission voted to modify Request No. 4 and not to modify Requests Nos. 5 and 6. (R. 104.) The Commission issued its written determination on the request to modify on July 2, 2021 ("the Determination"). (R. 132-152.) This 80C appeal followed, in which STC appeals the Determination on the

---

[1] 21-A M.R.S. § 1003(1) (2019) authorizes the Commission to conduct investigations of electoral campaign activity and the registration and financial activities of political entities, including PACs. The Commission is authorized to subpoena witnesses and records for investigatory purposes. *Id.*
[2] Only the second subpoena is at issue in this appeal.

grounds that Requests Nos. 5 and 6 violate the Fourth Amendment to the United States Constitution and Article 1, section 5 of the Maine Constitution.

## II.   80C Standard

Review of final actions of state agencies by the Superior Court is governed by the Maine Administrative Procedures Act, 5 M.R.S. §§ 11001-11008, and M.R. Civ. P. 80C. The court is authorized to reverse an agency's decision if the decision is in violation of constitutional or statutory provisions, in excess of statutory authority, made upon unlawful procedure, affected by bias or error of law, unsupported by substantial evidence in the record, or arbitrary or capricious or characterized by abuse of discretion. 5 M.R.S. § 11007(4)(C); *see Goodrich v. Me. Pub. Emps. Ret. Sys.*, 2012 ME 95, ¶ 6, 48 A.3d 212. The court shall not substitute its judgment for that of the agency on questions of fact. 5 M.R.S. § 11007(3).

## III.   Discussion

On appeal, STC challenges the decision of the Commission not to modify Requests Nos. 5 and 6 on constitutional grounds. Specifically, STC argues that Requests Nos. 5 and 6 violate the Fourth Amendment to the United States Constitution and Article 1, section 5 of the Maine Constitution because the requests are overbroad and not relevant to the purpose of the Commission's investigation.[3] The United States Supreme Court has held that "when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *See v. Seattle*, 387 U.S. 541, 544 (1967); *see Donovan v. Lone Steer*, 464 U.S. 408, 415 (1984); *Cent. Me. Power v. Me Pub. Utils. Comm'n*, 395 A.2d 414, 426 (Me. 1978)

---

[3] Article 1, section 5 of the Maine Constitution has been interpreted coextensively with the Fourth Amendment to the United States Constitution. *State v. Gulick*, 2000 ME 170, ¶ 9 n.3, 759 A.2d 1085.

(subpoena issued by administrative agency is enforceable if "(1) the inquiry is one the demanding agency is authorized by law to make, (2) the information sought is relevant to the authorized inquiry, and (3) the disclosure sought is reasonable, i.e., the demand is not disproportionately burdensome or unreasonably broad").

## A. Sufficiently Limited in Scope

STC argues that the requests are not "sufficiently limited in scope." STC claims that Requests Nos. 5 and 6 exceed the scope of the Commission's investigatory authority because the requested documents are unrelated to STC's activities in connection with the Ballot Question. The scope of the investigation, which is to determine whether STC was required to register as a PAC or STC, is squarely within the Commission's statutory authority to investigate violations of Maine's campaign finance laws. *See* 21-A M.R.S. § 1003(1). As discussed below, the documents are clearly relevant to the Commission's investigation. The record contains no evidence supporting STC's contention that the documents are unrelated to activities within the scope of the Commission's investigatory authority. Accordingly, the Court finds that Requests Nos. 5 and 6 are sufficiently limited in scope.

## B. Relevant in Purpose

STC argues that the documents sought in Requests Nos. 5 and 6 are not relevant to the Commission's investigation. The underlying investigation seeks to determine whether STC qualified as a PAC or BQC, and therefore whether STC violated Maine campaign finance laws by failing to register as such. A PAC is defined as including:

> (1) Any separate or segregated fund established by any corporation, membership organization, cooperative or labor or other organization whose purpose is to initiate or influence a campaign;

> (4) Any person, including any corporation or association, other than an individual, that has as its major purpose initiating or influencing a

campaign and that receives contributions or makes expenditures aggregating more than $1,500 in a calendar year for that purpose; and

(5) Any person, other than an individual, that does not have as its major purpose influencing candidate elections but that receives contributions or makes expenditures aggregating more than $5,000 in a calendar year for the purpose of influencing the nomination or election of any candidate to political office.

21-A M.R.S. § 1052(5)(A) (2019). However, the definition of PAC excludes:

[O]rganization[s] whose only payments of money in the prior 2 years for the purpose of influencing a campaign in this State are contributions to candidates, party committees, political action committees or ballot question committees registered with the commission or a municipality and that has not raised and accepted any contributions during the calendar year for the purpose of influencing a campaign in this State.

§ 1052(5)(B). This exclusion is commonly referred to as the "donor exception."

A BQC is defined as an entity, other than a PAC, "who receives contributions or makes expenditures, other than by contribution to a political action committee, aggregating in excess of $5,000 for the purpose of initiating or influencing a campaign." 21-A M.R.S. § 1056-B (2019).[4]

Thus, the nature and amount of an entity's expenditures, in part, determine whether the entity is required to register as a PAC or BQC. Accordingly, information about the aggregate of STC's expenditures, the purpose of the expenditures, the entities to which expenditures were directed, and the purposes of the entities to which expenditures were directed, is highly relevant to the investigation. While STC argues that records relating to the Nonparty Entities are irrelevant because its payments to the Nonparty Entities were made for purposes unrelated to the Ballot Question, the record lacks any evidence supporting its contention. Review of the requested records is necessary to shed light on this relevant question.

---

[4] The Court notes that § 1056-B was repealed effective October 18, 2021. The Commission's investigation centers on STC's activities during the time that § 1056-B was in effect.

## C. Specific in Directive

STC argues that Requests Nos. 5 and 6 are not specific in directive because the requests seek all documents related to the Nonparty Entities. However, STC does not assert and the record does not support that producing the requested documents would be unreasonably burdensome.[5] Moreover, the requests are clearly distinguishable from a demand for unfettered access to all the books and records of an organization. *See* requires only that an agency designate "the needed documents in a formal subpoena," which the Commission has satisfied.

## IV. Conclusion

For the foregoing reasons, the Commission's decision not to modify or vacate Requests Nos. 5 and 6 of the Subpoena did not constitute a violation of the Fourth Amendment to the United States Constitution or Article 1, section 5 of the Maine Constitution. Accordingly, the Court denies STC's 80C appeal.

The entry is:

Petitioner Clean Energy for ME, LLC, a/k/a Stop the Corridor's Rule 80C appeal is DENIED.

The Clerk is directed to incorporate this Decision into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _01/03/2022_

MaryGay Kennedy, Justice
Maine Superior Court

---

[5] "Some burden on subpoenaed parties is to be expected, . . . is necessary in furtherance of the agency's legitimate inquiry and the public interest." *United States v. Tivian Lab'ys, Inc.*, 589 F.2d 49, 55 (1st Cir. 1978) (quoting *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977)).

Entered on the Docket: 01/04/2022